John J. Hebert (#010633)
Philip R. Rudd (#014026)
Wesley D. Ray (#026351)
**POLSINELLI SHUGHART**
CityScape Plaza
One E. Washington, Suite 1200
Phoenix, AZ 85004
Telephone: (602) 650-2000
Facsimile: (602) 264-7033
E-Mail: jhebert@polsinelli.com
E-Mail: prudd@polsinelli.com
E-Mail: wray@polsinelli.com

*Attorneys for the Debtor*

**IN THE UNITED STATES BANKRUPTCY COURT**

**THE DISTRICT OF ARIZONA**

| In re: | Chapter 11 Proceedings |
|---|---|
| ARTE SENIOR LIVING L.L.C., | Case No. 2-12-bk-14993-GBN |
| Debtor. | **DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION DATED DECEMBER 11, 2012, AS MODIFIED ON FEBRUARY 25, 2013 BY CERTAIN NON-ADVERSE MODIFICATIONS** |

Arte Senior Living, L.L.C., debtor-in-possession in the above-captioned bankruptcy case (the "Debtor"), hereby submits to the Court and creditors of the Debtor's Estate the following *First Amended Plan of Reorganization Dated December 11, 2012, as Modified on February 25, 2013 by Certain Non-Adverse Modifications*" (the "Plan"), pursuant to §§ 1121(a) and 1127(a) of the Bankruptcy Code. This Plan sets forth certain non-adverse modifications to the Debtor's *First Amended Plan of Reorganization Dated December 11, 2012* ("First Amended Plan") for which the Debtor sought, and received, votes from creditors. This Plan supersedes and replaces the First Amended Plan.

**I.     DEFINITIONS.**

For purposes of this Plan, except as expressly provided herein or unless the context otherwise requires, all capitalized terms not otherwise defined herein shall have the meanings ascribed to them in this Section I of the Plan or in the Disclosure Statement. Any term used in the

Plan that is not defined in the Plan, but is defined in the Bankruptcy Code or the Bankruptcy Rules, retains the meaning ascribed to such term in the Bankuptcy Code or the Bankruptcy Rules. Whenever the context requires, such terms include the plural as well as the singular, the masculine gender includes the feminine gender, and the feminine gender includes the masculine gender.

As used in this Plan, the following terms have the meanings specified below:

**Administrative Claim**: Every cost or expense of administration in the pending case, including, but not limited to, any actual and necessary expenses of preserving or disposing of the assets of the Estate, any actual and necessary expenses incurred in operating the Debtor's business post-petition, any professional fees and costs approved by the Court, and all Claims approved under § 507(a)(2) of the Bankruptcy Code.

**Allowed Claim**: Allowed Claim shall mean a Claim:

(a) with respect to which a proof of claim has been filed with the Court within the applicable period of limitation fixed by Rule 3003 of the Rules of Bankruptcy Procedure or by any Order of the Court setting a bar date, and to which no objection to the allowance of the Claim has been filed by the Debtor or any other party or as to which any such objection has been determined by an order or judgment of the Court which is no longer subject to appeal and to which no appeal is pending, or

(b) which is scheduled in the list of creditors prepared and filed with the Court pursuant to Rule 1007(b), Rules of Bankruptcy Procedure, and not listed as disputed, contingent or unliquidated.

An Allowed Claim shall not include unmatured or post-petition interest, penalties, fees or costs, unless specifically stated in the Plan. A claim shall be allowed only for the amount of money or money's worth actually paid to the Debtor, plus any interest allowed by the Court or agreed upon by the Debtor. Notwithstanding § 502(a) of the Code and Rules 3001 and 3003, for the purposes of the Plan, a Claim shall not be an Allowed Claim unless it satisfies the definition of Allowed Claim under this Plan.

**Allowed Interest**: An Interest in the Debtor held by a person or entity, as of the Effective Date, and as to which (a) such Interest was listed in the Debtor's Schedules of Assets and

Liabilities and Statement of Financial Affairs, and no objection has been made within the time allowed for the making of objections, (b) a Final Order has been entered allowing such Interest, or (c) a timely and proper proof of interest has been filed, and as to which no objection to the allowance of the Interest has been filed by the Debtor or any other party, or as to which any such objection has been determined by an order or judgment of the Court which is no longer subject to appeal and to which no appeal is pending.

**Allowed Priority Claim**: The Allowed Claim of a Claimant that is entitled to priority in payment under 11 U.S.C. §§ 507(a)(3) through (a)(10).

**Allowed Secured Claim**: An Allowed Claim to the extent that such Allowed Claim is secured by a lien which is unavoidable, on property in which the Estate has an interest, to the extent of the value of such Creditor's interest in the Estate's interest in such property as determined in light of the purpose of the valuation and of the proposed disposition and use of such property.

**Allowed Unsecured Claim**: An Allowed Claim to the extent that such Allowed Claim is not secured by a lien on property in which the Estate has an interest.

**Bankruptcy Code**: 11 U.S.C. §§ 101, et seq.

**Bankruptcy Court**: The United States Bankruptcy Court for the District of Arizona or any other court which may have jurisdiction over this case or any proceeding arising under, in, or relating to this case.

**Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure in effect as of the Petition Date.

**Chapter 11**: Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 1101, et seq.

**Claim**: (a) A right to payment, whether or not such right is reduced to judgment, liquidated, un-liquidated, fixed, contingent, matured, un-matured, disputed, undisputed, legal, equitable, secured or unsecured, which right arose or accrued prior to the Confirmation Date; (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, un-matured, disputed, undisputed, secured, or unsecured, where such right

arose or accrued prior to Confirmation; or (c) a claim arising under 11 U.S.C. § 502(g).

**Claimant or Creditor**: Any person or entity that asserts a Claim.

**Confirmation**: The signing by the Court of the Confirmation Order.

**Confirmation Date**: The date upon which the Confirmation Order is entered upon the Bankruptcy Court's docket.

**Confirmation Order**: The Order signed by the Bankruptcy Court pursuant to 11 U.S.C. § 1129 confirming this Plan.

**Contingent Claim**: Any Claim for which a proof of claim has been filed with the Bankruptcy Court: (a) which was not filed in a sum certain, or which has not accrued and is dependent on a future event that has not occurred and may never occur, and (b) which has not been allowed on or before the Confirmation Date.

**Court**: The Bankruptcy Court.

**Debtor**: Arte Senior Living, LLC, an Arizona limited liability company.

**Disbursing Agent**: The Reorganized Debtor shall be the Disbursing Agent and shall make distributions to holders of Allowed Claims under the Plan.

**Disclosure Statement**: The Debtor's Disclosure Statement relating to the First Amended Plan, and any amendments and supplements thereto as approved by an order of the Bankruptcy Court.

**Disputed Claim**: A Claim which the Debtor listed as un-liquidated, disputed or contingent in its Schedules of Assets and Liabilities, or to which an objection has been filed which has not been resolved by a Final Order of the Bankruptcy Court.

**Effective Date**: The first business day that is at least 30 days after the Confirmation Date.

**Estate**: The Debtor's bankruptcy estate created by the filing of the Petition as identified and described in § 541 of the Bankruptcy Code.

**Final Order**: An order or judgment of the Bankruptcy Court as to which no stay has been entered.

**Insider**: A person or entity within the definition contained at § 101(31) of the Bankruptcy Code.

**Interest**: Any equity interest in the Debtor as of the Petition Date.

**Interest Holder**: Any person or persons owning an Interest in the Debtor as of the Petition Date.

**New Debt Obligations**: Those debts of the Debtor which existed pre-confirmation, but which are modified by the confirmed Plan resulting in the creation of a new note or obligation of the Reorganized Debtor pursuant to this Plan. The obligations for which the Reorganized Debtor has liability under the terms of the confirmed Plan. The New Debt Obligations shall not be considered in default unless or until the Reorganized Debtor defaults on such obligations after the Effective Date.

**Person**: Any individual, corporation, partnership, joint venture, association, joint stock company, trust, unincorporated association or organization, governmental agency, or associated political subdivision.

**Petition**: The original voluntary petition for relief filed by the Debtor under Chapter 11.

**Petition Date**: The date on which the Petition was filed; July 5, 2012.

**Plan**: This Plan and any amendments or supplements thereto.

**Plan Rate**: The annual rate of interest to be paid with respect to Allowed Claims entitled to recover interest pursuant to this Plan, which rate is 3.75%, unless the Bankruptcy Court determines that the Plan Rate should be some other amount, in which case the Plan Rate shall be the rate determined by the Court.

**Property:** The property owned by the Debtor, and the principal asset of the Estate, consisting of certain real property and improvements known as the Arte resort retirement community located at 11415 North 114th Street, Scottsdale, Arizona.

**Pro Rata**: The ratio of an Allowed Claim or Allowed Interest in a particular Class to the aggregate amount of all Allowed Claims or Allowed Interests in that Class.

**Reorganized Debtor**: The Debtor after the Effective Date.

**SMA.**: SMA Portfolio Owner L.L.C.; a creditor of the Debtor who asserts a claim secured by the Property.

**Schedules or Schedules and Statements**: The Schedules of Assets and Liabilities and

Statement of Financial Affairs, and any amendments thereto, filed by the Debtor in this case.

**Tenants:** The parties that reside at the Property.

**Undersecured**: The term describing the Allowed Claim of a Secured Creditor when the value of the collateral securing said Allowed Claim is less than the amount of the Allowed Claim.

**Unliquidated**: The term describing the Allowed Claim of a Creditor when the value of the claim has not been determined or stated with finality.

## II. CLASSIFICATION OF CLAIMS AND INTERESTS.

### A. Class 1: Priority Claims

1. Class 1-A consists of Allowed Administrative Claims.
2. Class 1-B consists of Allowed Priority Claims under 11 U.S.C. §507(a)(8).

### B. Class 2: Secured Claims

1. Class 2-A consists of the Allowed Secured Claim of SMA Portfolio Owner L.L.C.
2. Class 2-B consists of the Allowed Secured Claim of Maricopa County.
3. Class 2-C consists of the Allowed Secured Claim of Enterprise Bank.
4. Class 2-D consists of the Allowed Secured Claim of TCF Equipment Finance Inc.

### C. Class 3: Unsecured Claims

1. Class 3-A consists of the Allowed Unsecured Claim of SMA Portfolio Owner L.L.C, if any.
2. Class 3-B consists of Allowed Unsecured Claims of Tenants.
3. Class 3-C consists of the Allowed Unsecured Claims of Creditors not treated elsewhere under this Plan.

### D. Class 4: Interest Holders

1. Class 4 consists of all Allowed Interests of Interest Holders.

## III. IMPAIRMENT OF CLASSES.

Classes 1-A and 1-B are unimpaired under the Plan. All other Classes are Impaired, as that term is defined in § 1124 of the Bankruptcy Code.

IV. **TREATMENT OF CLASSES.**

A. <u>**Class 1: Priority Claims**</u>

1. **Class 1-A: Administrative Claims**

This Class consists of Allowed Administrative Claims. Unless Claimants holding Claims in this Class agree to an alternative form of treatment, the Allowed Administrative Claims of Class 1-A shall be paid in full, in cash, on or before the Effective Date, or as they are allowed and ordered paid by the Court. Any Class 1-A Administrative Claim not allowed as of the Effective Date shall be paid as soon thereafter as it is allowed by the Court according to the terms of this Class.

This Class is not impaired.

2. **Class 1-B: Tax Claims**

This Class consists of Allowed Priority Claims under 11 U.S.C. § 507(a)(8) which are not otherwise treated as secured claims herein. As provided in 11 U.S.C. § 1129(a)(9)(C), unless Claimants holding Claims in this Class agree to an alternative form of treatment, the Allowed Priority Claims of Class 1-B shall receive regular installment payments in cash a) of a total value, as of the Effective Date of the Plan, equal to the allowed amount of such claim; b) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and c) in a manner not less favorable than the most favored non-priority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b)).

This Class is not impaired.

B. <u>**Class 2: Secured Claims**</u>

1. **Class 2-A: Allowed Secured Claim of SMA Portfolio Owner L.L.C.**

This class consists of the Allowed Secured Claim of SMA Portfolio Owner L.L.C. ("SMA"). SMA asserts a Claim against the Debtor, allegedly secured by the Property, in the approximate amount of $34,262,661. The amount of SMA's Allowed Secured Claim will be determined by the Court, in accordance with Section 506(a) of the Bankruptcy Code. The remainder of SMA's Allowed Claim, if any, shall be treated as an unsecured claim in Class 3-A. If the Court determines, or the parties agree, that SMA's claim is fully secured, any unpaid fees and

accrued interest allowed shall be added to the principal of SMA's Allowed Secured Claim and be paid pursuant to the terms of the Plan.

The Debtor will pay SMA's Allowed Secured Claim in full, with interest at the Plan Rate, or such rate as the Court may determine, on or prior to the twelfth anniversary of the Effective Date (the "SMA Maturity Date"). The first payment to SMA will be made on or before the ninetieth day after the Effective Date and each payment thereafter will be made on the first business day of each succeeding quarter. During the two years immediately following the Effective Date, the Debtor will make quarterly interest-only payments to SMA at the Plan Rate or the rate set by the Court. Thereafter, the Debtor shall make quarterly payments of principal and interest, based upon a twenty-five year amortization and the accrual of interest, through to the SMA Maturity Date. All remaining sums payable under the Plan on account of SMA's Allowed Secured Claim will be paid to SMA on the SMA Maturity Date.

SMA will retain its existing lien on the Property, to the extent of its Allowed Secured Claim, with the same validity and priority as existed pre-petition, until its Allowed Secured Claim has been satisfied in full. At any time, the Debtor may pay the balance of SMA's Allowed Secured Claim without penalty. Upon payment in full of SMA's Allowed Secured Claim, SMA's interest in the Property will be deemed satisfied, extinguished, and released in full

Notwithstanding anything herein to the contrary, at any time, the Reorganized Debtor, in its sole and absolute discretion, may sell the Property so long as such sale, alone or in conjunction with additional contributions from the Interest Holders, will comply with the requirement of section 363 of the Bankruptcy Code. Any proceeds available, after payment of commissions, closing costs, other reasonable and customary expenses, and the remaining balance of SMA's Allowed Secured Claim shall be paid to Allowed Unsecured Claims until such Claims are either paid in full, or all net sale proceeds are expended.

This Class is impaired.

2.  **Class 2-B: Allowed Secured Claim of Maricopa County**

This Class consists of the Allowed Secured Claim of Maricopa County, Arizona ("Maricopa County"), represented to be in the approximate amount of $81,229, secured by a tax

1 lien on the Property.

The Allowed Secured Claim of Maricopa County will be paid in equal quarterly payments of principal and interest over a term of three years. The first payment will be made on or before the ninetieth day after the Effective Date and each payment thereafter will be made on the first business day of each succeeding quarter. Interest will accrue and will be paid at the statutory rate plus 1%. The County will retain its existing secured interest in the Property until this claim has been satisfied in full.

This Class is impaired.

### 3. Class 2-C: Allowed Secured Claim of Enterprise Bank

This Class consists of the Allowed Secured Claim of Enterprise Bank ("Enterprise"), in the approximate amount of $7,230, secured by a lien on a 2009 Cadillac DTS ("Enterprise Collateral") used by the Debtor in connection with the operation and maintenance of the Property. The Debtor believes that this Claim is fully secured, and this Claim will be treated as if it is fully secured.

Enterprise's Allowed Secured Claim, which shall include all of Enterprise Bank's post-petition interest, attorney's fees, and other applicable charges due under and pursuant to its loan documents, will be treated as follows:

    a. Enterprise will retain its lien on the Enterprise Collateral until Enterprise's Allowed Secured Claim is paid in full.

    b. On the Effective Date, the Debtor will pay the sum of $2,000, which amount will be applied to the principal balance of Enterprise's Allowed Secured Claim.

    c. The remainder of Enterprise's Allowed Secured Claim will paid in full in equal quarterly installments of principal and interest, accrued at the rate of 6% per annum, over three years, commencing on the ninetieth day after the Effective Date and ending on the third anniversary of the Effective Date (the "Enterprise Maturity Date").

          d.        The Reorganized Debtor will have the right, in its sole and absolute discretion, to pre-pay the full amount of Enterprise's Allowed Secured Claim at any time prior to the Enterprise Maturity Date without penalty.

          e.        Immediately upon payment, in full, of Enterprise's Allowed Secured Claim, its secured interest in the Enterprise Collateral and any other collateral securing Enterprise's Allowed Secured Claim will be deemed satisfied, extinguished, and released in full.

This Class is impaired.

**4.    Class 2-D:  Allowed Secured Claim of TCF Equipment Finance Inc.**

This Class consists of the Allowed Secured Claim of TCF Equipment Finance Inc. ("TCF"), in the approximate amount of $32,597, secured by a lien on a 2010 Ford Shuttle Bus ("TCF Collateral") used by the Debtor in connection with the operation and maintenance of the Property. The Debtor believes that this Claim is fully secured

TCF's Allowed Secured Claim will be treated as follows:

          a.        TCF will retain its lien on the TCF Collateral until TCF's Allowed Claim is paid in full.

          b.        On the Effective Date, the Debtor will pay the sum of $2,000, which amount will be applied to the principal balance of TCF's Allowed Claim.

          c.        The remainder of TCF's Allowed Claim will paid in full in equal quarterly installments of principal and interest, accrued at the rate of 6% per annum, commencing on the ninetieth day after the Effective Date and ending on the second anniversary of the Effective Date (the "TCF Maturity Date").

          d.        The Reorganized Debtor will have the right, in its sole and absolute discretion, to pre-pay the full amount of TCF's Allowed Claim at any time prior to the TCF Maturity Date without penalty.

          e.        Immediately upon payment, in full, of TCF's Allowed Claim, its secured interest in the TCF Collateral and any other collateral securing TCF's Allowed Claim will be deemed satisfied, extinguished, and released in full.

Case 2:12-bk-14993-GBN   Doc 158   Filed 02/25/13   Entered 02/25/13 15:35:27   Desc
Main Document   Page 10 of 19
2842129.2

This Class is impaired.

C. **Class 3: Unsecured Claims**

   1. **Class 3-A: Allowed Unsecured Claim of SMA**

   This Class consists of the Allowed Unsecured Claim of SMA, if any exists. On account of its Allowed Unsecured Claim, on a pro rata basis, SMA will share in the Unsecured Distribution, as defined below, with the holders of Claims in Class 3-C.

   This Class is impaired.

   2. **Class 3-B: Allowed Unsecured Claims of Tenants**

   This Class consists of all Allowed Unsecured Claims of Tenants. With respect to the Claims in this class, the Reorganized Debtor shall retain its right and ability to determine whether and to what extent a Tenant is entitled to an allowed unsecured claim, and to ascertain the basis for any such claim. If the basis of the Tenant Claim is its security deposit, notwithstanding anything to the contrary in the governing lease or otherwise applicable law, the Reorganized Debtor shall not be required to pay the claim until 90 days after the later of (a) the date that the Debtor determines the appropriate amount of the security deposit to be paid and (b) the date the tenant vacates its premises. This 90 day delay is necessary in order to ensure that the Debtor has available funds in an amount sufficient to pay the security deposit to the Tenant. If the basis for the claim is something other than a security deposit, it will be treated similarly to the unsecured claims in Class 3-C.

   This Class is impaired.

   3. **Class 3-C: All Other Allowed Unsecured Claims**

   This Class consists of all Allowed Unsecured Claims not otherwise provided for in this Plan. The Allowed Unsecured Claims in this Class will share, *pro rata* among themselves and with SMA's Allowed Unsecured Claim in Class 3-A, in a distribution of the sum of $100,000 (the "Unsecured Distribution") on the 60th day following the Effective Date (the "Unsecured Distribution Date"). To the extent that there are any pending objections to Unsecured Claims as of the Unsecured Distribution Date, the Reorganized Debtor will take such objections into account on the Unsecured Distribution Date, and will reserve such portion of the Unsecured Distribution as is

necessary to address such Claims until such time as all Claims have been either allowed or disallowed. Upon allowance, the reserved amount shall be paid to the claimant holding the allowed claim on the same *pro rata* basis as other allowed claims.

This Class is impaired.

### D. Class 4: Interest Holders

Class 4 consists of the Allowed Interests in the Debtor. The Interest Holders will contribute cash toward the funding of the confirmed Plan, in consideration of owning the equity in the Reorganized Debtor, under the terms and conditions set forth herein (the "New Value").

The New Value will be contributed to the Reorganized Debtor as follows:

(a) $500,000 in cash will be deposited into a third party, interest-bearing escrow account within ten (10) days of the Court's approval of the Disclosure Statement and any amendment thereto;

(b) An additional $500,000 in cash will be deposited in the third party, interest-bearing escrow account on or before the first date set for confirmation of the Debtor's Plan and any amendments or supplements thereto; and

(c) Other funds will be deposited, as necessary, to meet and satisfy the cash needs of the Reorganized Debtor as required by the confirmed Plan, including but not limited, funds that may be necessary to pay:

(1) Allowed Class 1 claimants;

(2) Any initial payments to allowed claims as required by the confirmed Plan; and

(3) Cash shortages of the Reorganized Debtor as contemplated by the confirmed Plan and the projections of revenue and expenses for the Reorganized Debtor.

The two $500,000 deposits referred to above (collectively, the "New Value Initial Deposits") shall be non-refundable except upon the following: (i) entry by the Court of an order dismissing or converting the pending Chapter 11 case, (ii) entry by the Court of an order appointing a trustee or an examiner with expanded powers in this case, (iii) entry by the Court of an order granting relief from the automatic stay to SMA, (iv) entry by the Court of an order

denying confirmation of the Plan or any amended plan of reorganization proposed by the Debtor, or (v) entry by the Court of an order confirming any plan that is not proposed by the Debtor.

Upon the Effective Date of the Plan, the Escrow Agent shall deliver the New Value Initial Deposits to the Reorganized Debtor to be used by the Reorganized Debtor for the purposes set forth in the Plan. Moreover, in the event that additional funds, in excess of the New Value Deposit, are necessary to satisfy the requirements for confirmation of the Plan, the Interest Holders will deliver such additional amounts to the Reorganized Debtor.

In addition to the contribution of the New Value on the Effective Date, on or before each anniversary of the Effective Date, until all payments called for under the Plan have been made in full, the New Interest Holders will deposit with the Reorganized Debtor sufficient funds to cover any cash deficits projected to exist during the following year. Furthermore, to the extent that there are any cash flow shortfalls during the term of the Plan for which the reorganized debtor does not have sufficient funds on deposit, the New Interest Holders will contribute additional New Value, in the form of cash, as an equity or capital contribution, to the reorganized debtor to fund such shortfalls.

If the Court determines that, under the circumstances, an auction of the Reorganized Debtor's equity is required under the law, then the Debtor will file a motion at that time to determine the terms and timing of the required auction of equity.

## V. MEANS FOR EXECUTING THE PLAN.

### A. Funding

As set forth above, the Plan will be funded by a combination of revenue generated through operations of the Property, cash on hand, and the infusion of funds from the New Interest Holders including, but not necessarily limited to, the New Value.

### B. Liquidation of Estate Property

The Reorganized Debtor shall have the authority to retain such brokers, agents, counsel, or representatives as it deems necessary to market, lease and/or sell assets of the Reorganized Debtor.

### C. Management

The Plan will be implemented through the continuation of the Debtor's current

management and the retention of the existing property manager, Encore Senior Living ("Encore"). David Leslie Craik, Stephen Kollins and Jason Craik are the Debtor's current managers. The Debtor's members are ASL Investments LLC and SD Holdings LLC, both of which are Arizona limited liability companies. TKD Investment Corp. is the sole member of ASL Investments LLC, and Jason Kraik is its sole manager. The members of SD Holdings LLC are Kollins ASL LLC and Avenir Retirement Communities LLC.

Encore is a limited liability company organized under the laws of the State of Delaware that is authorized to do business in the State of Arizona. Neither the Debtor, nor its principals, directly or indirectly, have any ownership interest in Encore. The New Interest Holders will have the ability, in their sole and absolute discretion, to subsequently engage a different property manager, or otherwise change the management of the Property or the Reorganized Debtor.

### D. Disbursing Agent

The Reorganized Debtor shall act as the Disbursing Agent under the Plan.

### E. Documentation of Plan Implementation

In the event any entity which possesses an Allowed Secured Claim or any other lien in any of the Debtor's assets for which the Plan requires the execution of any documents to incorporate the terms of the Plan, fails to provide a release of its lien or execute the necessary documents to satisfy the requirements of the Plan, the Debtor may record a copy of this Plan or the Confirmation Order with the appropriate governmental agency and such recordation shall constitute the lien release and creation of any necessary new liens to satisfy the terms of the Plan. If the Debtor deems advisable, it may obtain a further Order from the Court that may be recorded in order to implement the terms of the Plan.

## VI. EFFECT OF CONFIRMATION.

Except as otherwise provided in the Plan or the Confirmation Order, and except as may be provided in Section 1141(d)(2),(d)(3) and (d)(6) of the Bankruptcy Code, Confirmation acts as a discharge, effective as of the Confirmation Date, of any and all debts of the Debtor that arose any time before the entry of the Confirmation Order including, but not limited to, all principal and all interest accrued thereon, pursuant to § 1141(d)(1) of the Bankruptcy Code. The Discharge shall be

effective as to each Claim, regardless of whether a proof of claim thereon was filed, whether the Claim is an Allowed Claim, or whether the holder thereof votes to accept the Plan.

Any Allowed Claims which are otherwise impaired herein, and which are paid in deferred payments, shall be a New Debt Obligation of the Reorganized Debtor under the terms described herein and completely replace any pre-confirmation obligations of the Debtor. New Debt Obligations shall not be considered in default unless and until the Reorganized Debtor defaults in making payments on the New Debt Obligations pursuant to the terms of the Plan. The New Debt Obligations provided for in the Plan shall be in the place of, and completely substitute for, any pre-Confirmation obligations of the Debtor.

## VII. OBJECTIONS TO AND ESTIMATIONS OF CLAIMS.

### A. Objections and Bar Date for Filing Objections.

As soon as practicable, but in no event later than 50 days after the Effective Date, objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made pursuant to the Bankruptcy Code and the Bankruptcy Rules. Objections filed after such date will be barred.

### B. Settlement of Claims.

Settlement of any objection to a Claim not exceeding $10,000 shall be permitted on the fifteenth (15th) day after notice of the settlement has been provided to the Reorganized Debtor, the Creditors, the settling party, and other persons specifically requesting such notice, and if on such date there is no written objection filed, such settlement shall be deemed approved. In the event of a written objection to the settlement, the settlement must be approved by the Court on notice to the objecting party.

### C. Estimation of Claims.

For purposes of making distributions provided for under the Plan, all Claims objected to shall be estimated by the Disbursing Agent at an amount equal to (i) the amount, if any, determined by the Court pursuant to § 502(c) of the Bankruptcy Code as an estimate for distribution purposes; (ii) an amount agreed to between the Debtor and the Claimant; or (iii) that amount set forth as an estimate in the Plan or Disclosure Statement. Notwithstanding anything

herein to the contrary, no distributions shall be made on account of any Claim until such Claim is an Allowed Claim.

### D. <u>Unclaimed Funds and Interest</u>.

Distributions to Claimants shall be mailed by the Reorganized Debtor to the Claimants at the address appearing on the master mailing matrix unless the Claimant provides the Reorganized Debtor with an alternative address. For a period of one year from the date that a distribution was to be made by the disbursing agent but has gone uncollected by the Claimant, the disbursing agent shall retain any distributions otherwise distributable hereunder which remain unclaimed or as to which the disbursing agent has not received documents required pursuant to the Plan. Thereafter, the unclaimed funds shall be deposited in the appropriate distribution account for distribution to other Claimants entitled to participate in such respective fund.

## VIII. CLOSING OF CASE.

Until this case is officially closed, the Reorganized Debtor will be responsible for filing pre- and post-confirmation reports required by the United States Trustee and paying the quarterly post-confirmation fees of the United States Trustee, in cash, pursuant to 28 U.S.C. § 1930, as amended. Pursuant to 11 U.S.C. § 1129(a)(12), all fees payable under § 1930 of Title 28, as determined by the Court at the hearing on confirmation of the Plan, will be paid, in cash, on the Effective Date.

## IX. MODIFICATION OF THE PLAN.

Pursuant to § 1127 of the Bankruptcy Code, the Debtor may:

(a) Modify the Plan at any time before confirmation, so long as the Plan, as modified, meets the requirements of §§ 1122 and 1123 of the Bankruptcy Code. After the Debtor files such a modification with the Court, the Plan as modified will become the operative plan.

(b) Modify the Plan at any time after confirmation of the Plan and before substantial consummation of the Plan, so long as the Plan, as modified, meets the requirements of §§ 1122 and 1123 of the Bankruptcy Code. The Plan, as so modified, shall become the operative plan only if circumstances warrant such modification and the Court, after notice and a hearing, confirms such plan, as modified, under § 1129 of the Bankruptcy Code.

(c) The Debtor shall comply with section 1125 of the Bankruptcy Code with respect to the Plan, as modified.

(d) Any holder of a Claim or Interest that has accepted or rejected a Plan is deemed to have accepted or rejected, as the case may be, such Plan, as modified, unless, within the time fixed by the Court, such holder changes such holder's previous acceptance or rejection.

(e) The Plan, as modified, shall become the operative plan only after there has been disclosure under § 1125 as the Court may direct, notice and a hearing, and such modification is approved.

**X. JURISDICTION OF THE COURT.**

The Court will retain jurisdiction until this Plan has been fully consummated for, including but not limited to, the following purposes:

1. To determine the classification of the Claims of any Creditors and the re-examination of any Claims which have been allowed for the purposes of voting, and for the determination of such objections as may be filed to the Creditor's Claims. The failure by the Debtor or the Reorganized Debtor to object to or examine any Claim for the purpose of voting shall not be deemed to be a waiver of the right to object to or to re-examine the Claim in whole or in part.

2. To determine any Claims which are disputed by the Debtor or the Reorganized Debtor, whether such objections are filed before or after Confirmation, and to estimate any Unliquidated or Contingent Claims pursuant to 11 U.S.C. § 502(c)(1) upon request of the Debtor or any holder of a Contingent or Unliquidated Claim, and to make determinations regarding any objection to such Claim.

3. To determine all questions and disputes regarding title to the assets of the Estate, and to determine and adjudicate all causes of action, controversies, disputes or conflicts, whether or not subject to action pending as of the date of Confirmation, between the Debtor and any other party, including but not limited to, any rights of the Debtor or the Reorganized Debtor to recover assets pursuant to the provisions of the Bankruptcy Code.

4. To correct any defect, cure any omission or make any reconciliation of any

inconsistencies in this Plan, or the Confirmation Order, as may be necessary to carry out the purposes and intent of this Plan.

5. To address and approve any proposed modification of this Plan after Confirmation, pursuant to the Bankruptcy Rules and the Bankruptcy Code.

6. To enforce and interpret the terms and conditions of this Plan.

7. To enter any order, including injunctions, necessary to enforce the title, rights and powers of the Debtor or the Reorganized Debtor, and to impose such limitations, restrictions, terms and conditions of such title, right and power that this Court may deem necessary.

8. To enter an order concluding and terminating this case.

## XI. RETENTION AND ENFORCEMENT OF CLAIMS.

Pursuant to § 1123(b)(3) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce any and all claims of the Debtor, except those claims specifically waived herein. Any retained causes of action include, but are not limited to, all avoidance actions, fraudulent conveyance actions, preference actions, and other claims and causes of action of every kind and nature whatsoever, arising before the Effective Date which have not been resolved or disposed of prior to the Effective Date, whether or not such claims or causes of action are specifically identified in the Disclosure Statement.

Any recovery obtained from retained causes of action shall become an additional asset of the Reorganized Debtor and may distributed to creditors or used in connection with the operations of the Reorganized Debtor's business, in the sole discretion of the Reorganized Debtor, unless otherwise ordered by the Court.

## XII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

The Debtor hereby assumes all executory contracts and unexpired leases in existence as of the Confirmation Date, unless otherwise rejected by separate order of the Court. Claims under § 502(g) of the Code arising as a result of the rejection of executory contracts or unexpired leases shall be filed no later than 30 days after the entry of an order rejecting such executory contract or unexpired lease. Any such Claims not timely filed and served shall be disallowed.

XIII.  **REVESTING.**

Except as provided for in the Plan or in the Confirmation Order, on the Effective Date the Reorganized Debtor shall be vested with all the property of the Estate free and clear of all claims, liens, charges, and other interests of Creditors, arising prior to the Effective Date.  Upon the Effective Date, the Reorganized Debtor shall operate its business free of any restrictions.

DATED:  February 25, 2013.

POLSINELLI SHUGHART

By: _____
John J. Hebert
Philip R. Rudd
Wesley D. Ray
CityScape Plaza
One E. Washington, Suite 1200
Phoenix, AZ  85004
*Attorneys for the Debtor*

**COPY** of the foregoing mailed (or served via electronic notification if indicated by an "*")
on February 25, 2013, to:

| | |
|---|---|
| U.S. Trustee's Office<br>230 N. First Ave., Ste. 204<br>Phoenix, AZ  85003-1706 | Lori A. Lewis * LewisL01@mcao.maricopa.gov<br>MARICOPA COUNTY ATTORNEY'S OFFICE<br>Civil Services Division<br>Security Center Building<br>222 N. Central Ave., Ste. 1100<br>Phoenix, AZ  85004<br>   *Attorneys for Maricopa County Treasurer* |
| Patty Chan * patty.chan@usdoj.gov<br>Trial Attorney<br>U.S. TRUSTEE'S OFFICE<br>230 N. 1st Avenue, Suite 204<br>Phoenix, AZ  85003 | John H. Bae * baej@gtlaw.com<br>Denise J. Penn * pennd@gtlaw.com<br>Alexandra Aquino-Fike * aquinofikea@gtlaw.com<br>GREENBERG TRAURIG, LLP<br>200 Park Avenue<br>New York, NY  10166<br>   *Attorneys for SMA Portfolio Owner, LLC* |
| David D. Cleary * clearyd@gtlaw.com<br>GREENBERG TRAURIG, LLP<br>2375 E. Camelback Rd., Ste. 700<br>Phoenix, AZ  85016<br>   *Attorneys for SMA Portfolio Owner, LLC* | Isaac M. Gabriel * Isaac.gabriel@quarles.com<br>QUARLES & BRADY, LLP<br>Renaissance One<br>Two North Central Avenue<br>Phoenix, AZ  85004-2391<br>   *Attorneys for Enterprise Bank & Trust* |

By:   */s/  Cathie Bernales*