John J. Hebert (#010633)
Philip R. Rudd (#014026)
Wesley D. Ray (#026351)
**POLSINELLI SHUGHART**
CityScape Plaza
One E. Washington, Suite 1200
Phoenix, AZ 85004
Telephone: (602) 650-2000
Facsimile: (602) 264-7033
E-Mail: jhebert@polsinelli.com
E-Mail: prudd@polsinelli.com
E-Mail: wray@polsinelli.com
*Attorneys for Debtor*

# IN THE UNITED STATES BANKRUPTCY COURT

# THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>**ARTE SENIOR LIVING L.L.C.**,<br><br>Debtor. | Chapter 11 Case<br><br>Case No. 2:12-bk-14993-GBN<br><br>**MOTION TO APPROVE SETTLEMENT WITH SMA ISSUER I, LLC AND TO CONDITIONALLY DISMISS BANKRUPTCY CASE**<br><br>**(Expedited Consideration Requested)** |

Arte Senior Living, LLC, debtor and debtor-in-possession herein (the "Debtor"), by and through undersigned counsel, pursuant to 11 U.S.C. § 105 and Rule 9019, FEDERAL RULES OF BANKRUPTCY PROCEDURE, hereby moves the Court for its Orders:

(a) Approving that certain Compromise and Settlement Agreement ("Settlement Agreement") dated April 12, 2013 between, among others, the Debtor and SMA Issuer I, LLC ("SMA"), a copy of which is attached hereto as Exhibit "A;" and

(b) Conditionally dismissing this bankruptcy case in conjunction with the closing of the sale transaction contemplated in the Settlement Agreement.

The Settlement Agreement provides for, among other things, (a) the sale of the Debtor's property to The Reliant Group (the "Purchaser") for a cash payment of $30,000,000 and (b) the payment of a total of $31,000,000 (from the sale proceeds and other, non-Debtor sources) to SMA

in full and final satisfaction of its claims against the Debtor, the Debtor's property and the alleged guarantors of SMA's claim against the Debtor. The Settlement Agreement provides for certain time limits to accomplish the consummation of the sale and the settlement payment to SMA, including (a) the execution of a purchase agreement by April 18, 2013, (b) the payment of certain ***non-refundable*** deposits to SMA by May 14, 2013, and (c) the closing of the sale no later than June 18, 2013.

Consequently, because of this timetable (particularly the payment of the non-refundable deposits), it is necessary that the Court expeditiously consider this *Motion to Approve Settlement Agreement with SMA Issuer I, LLC and to Conditionally Dismiss Bankruptcy Case* ("Motion to Approve Settlement and Dismiss Case"). In that regard, the Debtor has simultaneously filed a separate motion seeking expedited consideration of the Motion to Approve Settlement and Dismiss Case.

In support of this Motion to Approve Settlement and Dismiss Case, the Debtor states as follows:

**I.  FACTUAL BACKGROUND**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334.

2. The subject matter of this motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (M).

3. Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1408.

4. The Debtor is an Arizona limited liability company authorized to do and doing business in the State of Arizona.

5. The Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code, on July 5, 2012 (the "Petition Date").

6. The Debtor is operating its business and managing its assets as a debtor-in-possession in accordance with 11 U.S.C. §§ 1107 and 1108.

7. The Debtor owns and operates a senior independent and assisted living facility located at 11415 North 114th Street, Scottsdale, Arizona (the "Property") known as the Arte.

8. SMA asserts a claim against the Debtor, allegedly secured by the Property, in the principal amount of over $34 million.

9. The Debtor has filed its *Debtor's First Amended Plan of Reorganization dated December 11, 2012, as Modified on February 25, 2013 by Certain Non-Adverse Modifications* (the "Debtor's Plan"), confirmation of which is set for April 25 and 26, 2013.

10. SMA has filed its competing *Plan of Reorganization Under Chapter 11 of the Bankruptcy Code for Arte Senior Living L.L.C.* (the "Lender's Plan").

11. In an effort to resolve their disputes concerning, among other things, SMA's asserted claim and the confirmation of the Debtor's Plan, the Debtor and SMA have negotiated and entered into the Settlement Agreement, subject to this Court's approval.

12. Generally, the Settlement Agreement provides:

   a. For the Debtor's sale of the Property to the Purchaser for the cash payment of $30,000,000; and

   b. For the payment of a total of $31,000,000 to SMA in full and final satisfaction and release of its claims and/or liens against the Debtor, the Property and the guarantors of SMA's claim against the Debtor.

13. A copy of the Settlement Agreement is attached hereto as Exhibit "A" and is incorporated herein by this reference. Interested parties are encouraged to review the Settlement Agreement in its entirety.

14. One of the conditions precedent to the closing of the transactions contemplated in the Settlement Agreement is the Court's approval of the Settlement Agreement.

15. Further, the parties contemplate that the sale of the Property will occur upon the dismissal of this bankruptcy case.

16. However, if for whatever reason, the sale does not close or a condition precedent to closing does not occur, then the bankruptcy case will not be dismissed, and the parties will re-engage in the currently pending litigation regarding, among other things, the confirmation of the Debtor's Plan and regarding the Lender's Plan.

17. Consequently, the Debtor seeks an order (a) approving the Settlement Agreement and (b) conditionally dismissing this bankruptcy case in conjunction with the closing of the transactions contemplated in the Settlement Agreement.

18. Such an order would be placed in escrow, and the dismissal of the bankruptcy case would only become effective upon the closing of the transactions contemplated in the Settlement Agreement. If such transactions do not close, for any reason, the dismissal order does not become effective.

19. Upon consummation of the transactions contemplated in the Settlement Agreement, the other secured creditors—consisting of two vehicle lenders with claims totaling approximately $42,000—will be satisfied.

20. Unsecured claims against the estate are relatively nominal and the Debtor does not anticipate objections to the Settlement Agreement from such unsecured creditors.

## II. LEGAL ANALYSIS

"On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). "The bankruptcy court has great latitude in approving compromise agreements" that are fair and equitable. *In re Woodson*, 839 F.2d 610, 620 (9th Cir. 1988). "The law favors compromise and not litigation for its own sake[.]" *In re A & C Props.*, 784 F.2d 1377, 1381 (9th Cir. 1986). The legal principles that should guide the exercise of the court's discretion in approving an application for settlement are well established and include the following:

(a) The probability of success in the litigation;

(b) The difficulties, if any, to be encountered in the matter of collection;

(c) The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

(d) The paramount interests of the creditors and a proper deference to their reasonable views in the premises.

*See e.g., In re Woodson*, 839 F.2d at 620; *In re A & C Properties*, 784 F.2d at 1381; *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976); *In re MGS Marketing*, 111 B.R. 264, 267 (9th Cir. B.A.P. 1990); *see*

1 *also In re General Store of Beverly Hills*, 11 B.R. 539, 541 (9th Cir. B.A.P. 1981) (in ruling on a
2 request to compromise a dispute, a court should consider the expense, benefits, hazards,
3 complexity, the time required to litigate, and whether disallowance of the settlement would result in
4 waste of the estate's assets). A settlement does not have to satisfy each of the aforementioned
5 factors in order to be approved, "provided that the factors as a whole favor approving the
6 settlement." *In re Pacific Gas & Electric Co.*, 304 B.R. 395, 417 (N.D. Cal. 2004).

In determining whether to approve a proposed settlement, the bankruptcy court does not substitute its judgment for that of the settlement's proponents. *Id.* at 574. The responsibility of the bankruptcy judge is not to decide the numerous questions of law and fact that may be raised regarding the settlement, but rather to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness. *In re Energy Coop.*, 886 F.2d 921 (7th Cir. 1989); *In re Teltronics Services, Inc.*, 762 F.2d 185, 189 (2d Cir. 1985); *In re International Distribution Centers, Inc.*, 103 B.R. 420, 423 (S.D.N.Y. 1989); *In re Bell & Beckwith*, 93 B.R. 569, 574-575 (Bankr. N.D. Ohio 1988); *In re Marshall*, 33 B.R. 42, 43 (Bankr. D. Conn. 1983). Thus, a mini-trial on the merits of the claims or a bankruptcy judge's independent investigation into the underlying dispute sought to be compromised is not required. *In re Walsh Constr. Inc.*, 669 F.2d 1325, 1328 (9th Cir. 1982); *Blair*, 538 F.2d at 851; *International Distribution Centers*, 103 B.R. at 423; *In re Carson*, 82 B.R. 847, 853 (Bankr. S.D. Ohio 1987).

In reviewing a proposed settlement, the Court must be mindful of the fact that the law favors compromise (*A & C Properties*, 784 F.2d at 1381; *Blair* 538 F.2d at 851) and that the bankruptcy court is uniquely situated to evaluate whether a compromise is in the best interest of the bankruptcy estate. *Walsh*, 669 F.2d at 1328. While the Court should consider the reasonable views of creditors, "objections do not rule. It is well established that compromises are favored in bankruptcy." *In re Lee Way Holding, Co.*, 120 B.R. 881, 891 (Bankr. S.D. Ohio 1990).

Here, upon consideration of the factors described above, and the other facts and circumstances surrounding the Debtor's reorganization, it is clear that the Settlement Agreement is fair and equitable, and is in the best interests of the Debtor, the Debtor's other creditors, and the bankruptcy estate. Approval of the Settlement Agreement will eliminate extensive litigation

2845732.1

between the Debtor and SMA regarding their competing plans of reorganization.  If the parties were to continue to engage in litigation, although it is unclear which plan would be confirmed, it is absolutely certain that a significant amount of time and money would be spent by the parties.  A large portion of this expense would constitute an administrative claim against the Debtor's estate, which further decrease the possibility and extent of recovery by the Debtor's other creditors.  Furthermore, approval of the Settlement Agreement will resolve the largest claim against the Debtor's estate.

Additionally, the parties contemplate, in conjunction with the closing, that this bankruptcy case be dismissed.  Under 11 U.S.C. § 1112(b), the Court *shall*, absent "unusual circumstances," dismiss a case under Chapter 11 if the movant establishes cause.  While § 1112(b) contains a list of examples of "cause," the list is non-exclusive, and the bankruptcy court possesses wide discretion to determine if cause exists.  *See In re Tornheim,* 181 B.R. 161, 163 (Bankr. S.D.N.Y. 1995).  Particularly relevant to this case, a debtor's request for dismissal should ordinarily be granted unless some "plain legal prejudice" will result to the creditors.  *In re Hall,* 15 B.R. 913, 917 (B.A.P. 9th Cir. 1981).  In addition to mandatory dismissal for cause under § 1112(b), the Court *may* dismiss a bankruptcy case pursuant to 11 U.S.C. § 305(a)(1) if "the interests of creditors and the debtor would be better served by such dismissal…"  The Court's decision to dismiss a case is discretionary and reversible only for abuse of discretion.  *In re Hickman*, 384 B.R. 832, 840 (B.A.P. 9th Cir. 2008).  Here, the Debtor requests that the Court conditionally dismiss the bankruptcy case in conjunction with the closing of the transactions contemplated in the Settlement Agreement.  Such a dismissal is in the best interests of the bankruptcy estate and the Debtor's creditors.

**CONCLUSION**

Based upon the foregoing, the Debtor respectfully requests that the Court enter an order approving the Settlement Agreement, ratifying in full the Debtor's entry into the Settlement Agreement, and authorizing the Debtor to take whatever action may be necessary to consummate the Settlement Agreement and otherwise carry it into effect.  The Debtor further requests that the Court enter an order conditionally dismissing this bankruptcy case in conjunction with the closing of the transactions contemplated in the Settlement Agreement.  If such closing does not occur, then

the dismissal of the case will not become effective, and the parties will proceed to prosecute their rights and remedies in the bankruptcy case, including the prosecution of the Debtor's Plan and the Lender's Plan.

DATED: April 15, 2013.

POLSINELLI SHUGHART

By: _____
John J. Hebert
Philip R. Rudd
Wesley D. Ray
CityScape Plaza
One E. Washington Street, Suite 1200
Phoenix, AZ 85004

*Attorneys for Debtor*

**COPY** of the foregoing mailed (or served via electronic notification if indicated by an "*")
on April 15, 2013, to:

| | |
|---|---|
| U.S. TRUSTEE'S OFFICE<br>230 N. 1st Avenue, Suite 204<br>Phoenix, AZ 85003 | John H. Bae * baej@gtlaw.com<br>Gary Ticoll* ticollg@gtlaw.com<br>GREENBERG TRAURIG, LLP<br>MetLife Building<br>200 Park Avenue<br>New York, NY 10166<br>   *Counsel for SMA Issuer I, LLC* |

By: _/s/Cathie Bernales_____

# EXHIBIT A

## COMPROMISE AND SETTLEMENT AGREEMENT

THIS COMPROMISE AND SETTLEMENT AGREEMENT (the "Agreement") is made and entered into as of this 12th day of April, 2013 by and among ARTE SENIOR LIVING L.L.C., an Arizona limited liability company, (the "Debtor") and its members, ASL INVESTMENTS LLC and SD HOLDINGS LLC, both Arizona limited liability companies (the "Members, and together with the Debtor, the "Borrower"), and STEPHEN A. KOLLINS, personally and as TRUSTEE of THE RESTATED AND AMENDED STEPHEN A. KOLLINS LIVING TRUST dated April 3, 1992; DAVID L. CRAIK and VIOLET CRAIK; and JASON D. CRAIK and CHRISTINE CRAIK (collectively, the "Guarantors") and SMA ISSUER I LLC, a Delaware limited liability company (the "Lender").

WHEREAS, on January 17, 2008, the Debtor and Bank of America, N.A. (the "Original Lender") entered into a loan transaction to finance certain costs related to the construction and development of 11415 North 114th Street, Scottsdale, Arizona (the "Property"), as evidenced by that certain *Construction Loan Agreement*, as modified by the First Loan Modification Agreement dated January 29, 2009, the Second Loan Modification Agreement dated December 22, 2010, and the Third Loan Modification Agreement dated February 23, 2011 (collectively, the "Loan Agreement") and that certain Promissory Note dated January 17, 2008, (the "Note"), evidencing the loan in the original principal amount of $36,250,000 (the "Loan");

WHEREAS, pursuant to the *Construction Deed of Trust, Assignment of Leases and Rents, Security Agreement and Financing Statement*, dated January 17, 2008 (the "Deed of Trust") and recorded on January 23, 2008 (as amended on December 22, 2010 and recorded on January 28, 2011), the Loan is secured by all the assets of the Debtor, including without limitation, the leases and rents of the Property;

WHEREAS, the Original Lender assigned its right, title and interest in the Loan to CSMI Investors LLC pursuant to various assignment documents dated September 29, 2011, and CSMI Investors LLC assigned its right, title and interest in the Loan documents to SMA Portfolio Owner L.L.C. ("SMA Predecessor") pursuant to various assignment documents dated September 29, 2011, and SMA Predecessor assigned its right, title and interest in the Loan documents to the Lender pursuant to various assignment documents dated December 27, 2012 (collectively, the "Assignment Documents");

WHEREAS, on January 17, 2008, the Guarantors executed and delivered a *Guaranty Agreement*, as modified by the Modification of Guaranty and Consent and Agreement of Guarantors dated February 23, 2011 (together, the "Guaranty"), guaranteeing payment and performance of the Note and other obligations under the Note, the Loan Agreement, the Deed of Trust, the Guaranty, and all other documents and instruments evidencing or securing the Loan (collectively, the "Loan Documents");

WHEREAS, the Loan matured on February 28, 2012, the Debtor defaulted under the Note by failing to repay the Loan, and SMA Predecessor proceeded to notice a foreclosure of its interest in the Property, and a non-judicial trustee's sale foreclosure auction was scheduled for July 5, 2012;

WHEREAS, on July 5, 2012, the Debtor filed a petition for relief under chapter 11, title 11 of the United States Code (the "Bankruptcy Code"), commencing Case No. 2:12-bk-14993-GBN (the "Bankruptcy Case"), which case is pending before the United States Bankruptcy Court for the District of Arizona (the "Bankruptcy Court");

WHEREAS, the SMA Predecessor commenced arbitration on or about November 13, 2012 pursuant to the Loan in the case captioned *SMA Portfolio Owner, LLC v. Kollins et al.*, Case No. 76 104 Y 0023712 JMLE (the "Arbitration");

WHEREAS, pursuant to the letter of intent dated April 9, 2013 by The Reliant Group (the "Purchaser"), and signed by the Lender and the Borrower, the Purchaser seeks to purchase the Property free and clear of all claims and liens held by the Lender for a cash payment of $30,000,000.00 (the "Purchase Price"), which amount will be paid to the Lender in accordance with the terms hereof;

WHEREAS, in consideration for this Agreement, the Borrower and/or the Guarantors shall make a payment, pursuant to the terms set forth below, to the Lender in the amount of $1,000,000.00 (which, collectively with the Purchase Price, shall total $31,000,000.00, herein referred to as the "Settlement Amount");

WHEREAS, the Borrower, the Guarantors and the Lender, having considered all of the relevant facts and circumstances, each negotiated in good faith, at arms' length and in a commercially reasonable manner in an effort to reach a mutually acceptable agreement to suspend litigation in the Bankruptcy Case, including regarding the *Debtor's First Amended Plan of Reorganization dated December 11, 2012, as Modified on February 25, 2013 by Certain Non-Adverse Modifications* (the "Debtor's Plan") and the Lender's *Plan of Reorganization Under Chapter 11 of the Bankruptcy Code for Arte Senior Living L.L.C.* (the "Lender's Plan"), settle their respective claims relating to the Loan, suspend the proceedings relating to the Arbitration and provide the mutual releases on the terms and subject to the conditions set forth herein;

WHEREAS, each the Lender, the Guarantors and the Borrower has independently for itself determined the reasonableness and fairness of the compromise and settlement provided for in this Agreement; and

WHEREAS, this Agreement is based upon the Debtor selling the Property to the Purchaser who is paying at least $30,000,000.00 as the Purchase Price; and

NOW, THEREFORE, in consideration of the mutual covenants, agreements and understandings herein contained and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, each of the Lender, the Borrower and each of the Guarantors, intending to be legally bound, hereby agree as follows:

1. <u>Suspension of Litigation and Arbitration</u>. The parties hereto agree to suspend all litigation regarding the Bankruptcy Case, including proceedings relating to the confirmation of the Debtor's Plan and any activities relating to the Lender's Plan, and the Arbitration until such time as the settlement contemplated herein closes according to its terms or otherwise terminates.

2. <u>Conditions Precedent to Closing</u>.

    (a) This Agreement shall be documented and executed by the parties hereto on or before 5:00 p.m. (Eastern Time) on April 12, 2013.

    (b) The parties hereto shall execute a purchase agreement for the sale of the Property on or before 5:00 p.m. (Eastern Time) on April 18, 2013 (the "Purchase Agreement").

    (c) The Debtor shall expeditiously seek Bankruptcy Court approval of a motion for an order approving this Agreement;

    (d) The Purchaser, Borrower and/or Guarantors shall make a nonrefundable payment of $2,500,000.00 to the Lender as an advance on the Settlement Amount on or before 5:00 p.m. (Eastern Time) on May 14, 2013; <u>provided, however</u>, that if the Purchaser requests an additional

four (4) days to complete the transaction, the Purchaser, Borrower and/or Guarantors shall instead make a nonrefundable payment of $1,000,000.00 to the Lender as an advance on the Settlement Amount on or before 5:00 p.m. (Eastern Time) on May 14, 2013, and the Purchaser, Borrower and/or Guarantors shall make a second nonrefundable payment of $1,500,000.00 to the Lender as a further advance on the Settlement Amount on or before 5:00 p.m. (Eastern Time) May 20, 2013.

(e) The Bankruptcy Court shall have entered an order approving this Agreement.

3. <u>Compromise and Settlement</u>.

(a) The sale of the Property pursuant to the Purchase Agreement shall take place on or before 5:00 p.m. (Eastern Time) June 18, 2013 (the "<u>Closing</u>"). At the Closing, the balance of the Settlement Amount due and owing shall be paid in full to the Lender.

(b) In the event the Closing does not occur as set forth herein, any payments made by the Borrower to the Lender pursuant to the terms of this Agreement shall be applied to the principal due and owing under the Loan.

(c) In the event any Condition Precedent does not occur by the time set forth herein, or the Closing does not occur as set forth herein, regardless of the reason for the failure, this Agreement shall terminate, and the litigation in the Bankruptcy Case and Arbitration shall commence. The parties may extend the time for performance of the Conditions Precedent, or waive any Condition Precedent in a writing signed by all of the parties to this Agreement.

(d) In consideration of this Agreement and automatically upon the Closing and without any further action by any person, (i) all claims or liens which have been granted to the Lender by the Borrower pursuant to the Loan Documents shall be (and hereby are) released and terminated by the Lender; (ii) the Borrower shall be authorized to file, at the Borrower's expense, termination statements with respect to all UCC financing statements or other lien registrations or filings registered or filed by the Lenders pursuant to the Loan Documents, naming the Lender as secured party, and the Borrower as debtor, without further action by the Lender; and (iii) the Loan Agreement and all other Loan Documents shall terminate and be of no further force or effect (except as otherwise specifically provided in this Agreement). The Lender shall execute and deliver, at the Purchaser or Borrower's request and at the Purchaser or Borrower's sole cost and expense, such other documents prepared by the Purchaser or Borrower that may be reasonably necessary to evidence and implement the foregoing compromise and settlement and termination and release of liens.

(e) Any funds received from the sale of the Property in excess of $30,000,000.00 shall be remitted to the Borrower.

4. <u>Cooperation by Lender with Purchaser</u>. In conformance with this Agreement, Lender shall make a good faith effort to cooperate with the Debtor and Purchaser in the implementation of the Closing and shall execute all reasonably necessary documents to facilitate the Closing at the cost of the Debtor and/or Purchaser.

5. <u>Release</u>.

(a) <u>General Release by the Borrower and Guarantor</u>. Without limiting the generality of the foregoing, in consideration of the agreements of the Lender contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged,

the Borrower and each of the Guarantors, on behalf of themselves, each of their respective Subsidiaries and Affiliates, each of their respective direct and indirect partners, members and shareholders, and each of all of their respective present and former affiliates, subsidiaries, divisions, directors, officers, members, managers, attorneys, employees, agents, representatives, administrators, executors, trustees, successors and assigns, and any other Person claiming by, through, or under any of the foregoing (collectively, the "Borrower Releasors"), does hereby absolutely, unconditionally and irrevocably waive, release and forever discharge the Lender, each of its respective subsidiaries and affiliates and each of their respective present and former partners, members, shareholders, affiliates, subsidiaries, divisions, directors, officers, members, managers, attorneys, employees, agents, representatives, administrators, executors, trustees, successors and assigns (collectively, the "Lender Releasees") from any and all rights (including all common law or other rights to seek indemnification, contribution, cost recovery, damages or other recourse or remedy), demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, debts, damages, claims, counterclaims, defenses, rights of set-off or recoupment, judgments, obligations and liabilities whatsoever, of every kind and nature, whether known or unknown, suspected or unsuspected, at law or in equity (each, a "Claim" and, collectively, "Claims") directly or indirectly arising from, upon or by reason of any circumstance, event, action, omission, transaction, cause or thing whatsoever arising at any time prior to the Closing, including without limitation, for or on account of, or in relation to, or in any way in connection with this Agreement, the Loan Documents and obligations hereunder or thereunder. The Borrowers and the Guarantor understand, acknowledge and agree that this is a full and final general release of all such Claims that could have been asserted in any legal or equitable proceeding against the Lender Releasees.

(b) General Release by the Lender Releasors. Without limiting the generality of the foregoing, in consideration of the agreements of the Borrower and Guarantors contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Lender, on behalf of themselves, each of their respective subsidiaries and affiliates and each of their respective present and former partners, members, shareholders, affiliates, subsidiaries, divisions, directors, officers, members, managers, attorneys, employees, agents, representatives, administrators, executors, trustees, successors and assigns, and any other person claiming by, through, or under any of the foregoing (collectively, the "Lender Releasors"), does hereby absolutely, unconditionally and irrevocably waive, release and forever discharge each of the Borrower and the Guarantors, each of their respective subsidiaries and affiliates, each of their respective direct and indirect partners, members and shareholders, and each of all of their present and former affiliates, subsidiaries, divisions, directors, officers, members, managers, attorneys, employees, agents, representatives, administrators, executors, trustees, successors and assigns (collectively, the "Borrower Releasees") from any and all Claims directly or indirectly arising from, upon or by reason of any circumstance, event, action, omission, transaction, cause or thing whatsoever arising at any time prior to the Closing, including without limitation, for or on account of, or in relation to, or in any way in connection with this Agreement, the Loan Documents or obligations or hereunder or thereunder. The Lender understands, acknowledges and agrees that this is a full and final general release of all such Claims that could have been asserted in any legal or equitable proceeding against the Borrower Releasees.

6. Miscellaneous.

(a) This Agreement embodies the entire agreement of the parties with regard to the subject matter hereof and any prior representations and agreements with regard to the same are superseded in their entirety hereby. Headings are for convenience of reference only and shall not

affect construction of this Agreement. The terms "hereof," "herein," "hereunder" and derivative words refer to this Agreement. Any reference to the masculine, feminine or neuter gender shall be deemed to include any gender or all three as appropriate. The use of the word "including" herein shall mean "including without limitation." Unless the context otherwise required, "neither," "nor," "any," "either" and "or" shall not be exclusive.

(b)     This Agreement shall be binding upon and shall inure to the benefit of and be enforceable by the parties hereto and their respective successors, endorsees, transferees, heirs, beneficiaries and assigns. Each of the Releasees is an express third party beneficiary of this Agreement and shall be entitled to enforce the terms of this Agreement as if such Lender Releasee or Borrower Releasee, as applicable, were a direct signatory hereto.

(c)     No failure or delay on the part of any party hereto in exercising any right, power or remedy under this Agreement shall operate as a waiver thereof; nor shall any single or partial exercise of such right, power or remedy preclude any other right, power or remedy under this Agreement. No amendment, modification, termination or waiver of any provision of this Agreement, nor consent to any departure therefrom, shall in any event be effective unless the same shall be in writing making explicit reference to this Agreement, and shall be effective only in the specific instance and for the specific purpose for which given, and executed by each of the parties hereto. No notice or demand in any case shall entitle the recipient to any other or further notice or demand in similar or other circumstances.

(d)     All notices and other communications relating to this Agreement shall be in writing. Any notice, request or communication hereunder shall be deemed to have been given on the date of receipt via hand delivery or delivery by overnight courier to the parties and their counsel of record, addressed as aforesaid, provided, however, that notice of a change of address, as hereinabove provided, shall be deemed to have been given only when actually received by the party to which it is addressed.

(e)     If any of the provisions of this Agreement shall contravene or be held invalid under the laws of any jurisdiction, this Agreement shall be construed as if not containing such provisions in such jurisdiction and the rights, remedies, warranties, representations, covenants and provisions hereof shall be construed and enforced accordingly in such jurisdiction and shall not in any manner affect such provision in any other jurisdiction, or any other provision in this Agreement in any jurisdiction.

(f)     This Agreement may be executed in counterparts, each of which when so executed and delivered shall be an original, but all of which together shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page of this document by facsimile or other electronic transaction in portable document format (pdf) shall be effective as delivery of a manually executed counterpart of this document.

[Signature pages follow]

The parties hereto have caused this Compromise and Settlement Agreement to be executed by their respective officers thereunto duly authorized as of the date first above written.

Debtor:  ARTE SENIOR LIVING L.L.C.

By: _____
Name: DAVID CARR
Title: MNG. DIR.

NY 242949552v3

2845584.5

The parties hereto have caused this Compromise and Settlement Agreement to be executed by their respective officers thereunto duly authorized as of the date first above written.

Guarantors:

STEPHEN A. KOLLINS, personally and as TRUSTEE of THE RESTATED AND AMENDED STEPHEN A. KOLLINS LIVING TRUST dated April 3, 1992

By: _____
Name: _____
Title: _____

DAVID L. CRAIK

By: _____
Name: _____DAVID CRAIK_____
Title: _____

VIOLET CRAIK

By: _____
Name: _____Violet CRAIK_____
Title: _____

JASON D. CRAIK

By: _____
Name: _____Jason Craik_____
Title: _____

CHRISTINE CRAIK

By: _____
Name: _____CHRISTINE CRAIK_____
Title: _____

NY 242949552v3

2845584.5



The parties hereto have caused this Compromise and Settlement Agreement to be executed by their respective officers thereunto duly authorized as of the date first above written.

Guarantors:

STEPHEN A. KOLLINS, personally and as TRUSTEE of THE RESTATED AND AMENDED STEPHEN A. KOLLINS LIVING TRUST dated April 3, 1992

By: *Stephen A Kollins*
Name: STEPHEN A. KOLLINS
Title: As individual & as Trustee

DAVID L. CRAIK

By:_____
Name:_____
Title:_____

VIOLET CRAIK

By:_____
Name:_____
Title:_____

JASON D. CRAIK

By:_____
Name:_____
Title:_____

CHRISTINE CRAIK

By:_____
Name:_____
Title:_____

NY 242949552v3

The parties hereto have caused this Compromise and Settlement Agreement to be executed by their respective officers thereunto duly authorized as of the date first above written.

ASL INVESTMENTS LLC

By: _____
Name: JASON CLARK
Title: Director

SD HOLDING LLC

By: _____
Name: DAVID CLARK
Title: MNG

NY 242949552v3

2845584.5

The parties hereto have caused this Compromise and Settlement Agreement to be executed by their respective officers thereunto duly authorized as of the date first above written.

Lender:                      SMA ISSUER I LLC

a Delaware limited liability company

By:     IMRF Loan Portfolio Manager LLC,
        a Delaware limited liability company
        its manager

By: _____
Name:      RO~~T~~ RAGSDALE
Title:        ~~VICE PRESIDENT~~

NY 242949552v4